UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aric WHEELER,<br><br>        Petitioner,<br><br>v.<br><br>Kathleen ALLISON, *et al.*,<br><br>        Respondents. | Case No.: 21-cv-01945-JLS-BGS<br><br>**REPORT & RECOMMENDATION GRANTING RESPONDENTS' MOTION TO DISMISS [ECF No. 4]** |

## I. INTRODUCTION

Petitioner Aric Wheeler ("Petitioner"), a state prisoner proceeding without counsel, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1.)[1] Respondent Kathleen Allison, Respondent N. Sahni, Respondent J. Tehrani, and Respondent C. Kusaj ("Respondents") moved to dismiss the Petition contending: (1) Petitioner's claim regarding California's Information Practices Act ("IPA") raises only state law issues that do not invoke the court's subject matter jurisdiction; and (2) Petitioner's claim about an allegedly false Comprehensive Risk Assessment ("CRA")

---

[1] The Court cites the CM/ECF pagination when referencing the Petition (ECF No. 1), Respondents' Motion to Dismiss (ECF No. 4), and Petitioner's Opposition (ECF No. 6).

1

21-cv-01945-JLS-BGS

does not lie in habeas. (ECF No. 4.) Petitioner's opposition to the motion ("Opposition") was filed on March 14, 2022. (ECF No. 7.)

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. Based on the documents and evidence presented, and for the reasons set forth below, the Court **RECOMMENDS** that Respondents' Motion to Dismiss (ECF No. 4) be **GRANTED** and that this action be **DISMISSED**.

## II. BACKGROUND

Petitioner is assigned to the custody of Richard J. Donovan State Prison ("R.J. Donovan"), despite temporarily being housed at the Department of State Hospitals – Atascadero. (ECF Nos. 1 at 1; 4 at 2 n.2.) Petitioner filed his Petition on November 12, 2021. (ECF No. 1.) On January 13, 2022, Respondents filed their Motion to Dismiss. (ECF No. 4.) On February 16, 2022, the Court granted Petitioner's request for extending the time to file his Opposition due to being confined to cell status under quarantine and was currently awaiting return to prison, making April 7, 2022 the deadline to file his Opposition. (ECF No. 6.) On March 14, 2022, Petitioner filed his Opposition to Respondents' Motion to Dismiss. (ECF No. 7.)

### A. Federal Habeas Petition

The Petition presented to the Court did not provide information regarding Petitioner's judgment of conviction, such as the length of sentence, his plea, and the offenses that Petitioner was convicted or pleaded guilty. (ECF No. 1 at 1–2.) Instead, Petitioner named the San Diego Superior Court as the court that entered judgment regarding a demurrer that he previously filed. (*Id.* at 1.) Petitioner indicated that he appealed the judgment to the California Court of Appeal, which was affirmed on March 24, 2022. (*Id.* at 2.) Petitioner then stated that he sought further review of the decision on appeal by the California Supreme Court. (*Id.*) Petitioner indicated that his request for direct review by the California Supreme Court was denied on May 12, 2021. (*Id.*)

As for Ground One of Petitioner's grounds for relief, Petitioner indicated that a "Federal Court has authority to pronounce a state court's ruling 'abuse of discretion' a 'significant departure' from a state legislative s[c]heme in violation of U.S. Constitution – 14th Amendment." (*Id.* at 6.)  In support, Petitioner stated that the state court's decision about the California's Information Practices Act[2] ("IPA") violated his fundamental rights

---

[2] "'The Information Practices Act, enacted in 1977, generally imposes limitations on the right of governmental agencies to disclose personal information about an individual. *Anti-Defamation League of B'nai B'rith v. Superior Ct.*, 67 Cal. App. 4th 1072, 1078–79 (Cal. Ct. App. 1998); *Nicholson v. McClatchy Newspapers*, 177 Cal.App.3d 509, 514, fn. 2 (Cal. Ct. App. 1986).  "The statute was designed by the Legislature to prevent misuse of the increasing amount of information about citizens which government agencies amass in the course of their multifarious activities, the disclosure of which could be embarrassing or otherwise prejudicial to individuals or organizations." *Anti-Defamation League of B'nai B'rith*, 67 Cal. App. 4th at 1079; *see also Jennifer M. v. Redwood Women's Health Center*, 88 Cal.App.4th 81, 87–88 (Cal. Ct. App. 2001); *Bates v. Franchise Tax Bd.*, 124 Cal.App.4th 367, 373 (Cal. Ct. App. 2004).

"'Under the Act, state agencies are required to limit the collection and retention of personal information to that necessary to accomplish the agency's specific purpose (§ 1798.14). If an agency maintains such a record (§ 1798.32), individuals must be informed when they request it.'" *Bates v. Franchise Tax Bd.*, 124 Cal.App.4th 367, 373 (Cal. Ct. App. 2004) (citing *Perkey v. Department of Motor Vehicles*, 42 Cal.3d 185, 193 (1986)).  Further, agencies must maintain records as accurately and completely as possible, Cal. Civ. Code § 1798.18, and, if asked to correct a record, an agency must either timely do so or advise the individual making the request why it will not do so, Cal. Civ. Code § 1798.35.

There is a private right of action for violations of the IPA under some circumstances.  The key remedial provisions of the IPA are §§ 1798.53 and 1798.45.  Section 1798.53 sets out a civil action for damages for the intentional disclosure of confidential personal information "maintained by a state agency or from 'records' within a 'system of records' ... maintained by a federal government agency...."  In addition, § 1798.53 authorizes an award of exemplary damages of at least $2,500.00, plus attorney fees and costs to a successful plaintiff.  Section 1798.45 provides for a direct civil action against "an agency" whenever it "[f]ails to comply" with any provision of the IPA "in such a way as to have an adverse effect on an individual."  Specifically, pursuant to § 1798.45 of the Act, an individual may bring a civil action if an agency does any of the following:

  (a) Refuses to comply with an individual's lawful request to inspect pursuant to subdivision (a) of Section 1798.34.
  (b) Fails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual.
  (c) Fails to comply with any other provision of this chapter, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual.

and liberty interests of the Fourteenth Amendment. (*Id.*) Petitioner stated that he presented a federal question regarding the state court's decision that strained the state legislature's intention regarding California's IPA, which allegedly the Court can strike down as a Fourteenth Amendment Constitutional violation. (*Id.*)

As for Ground Two, Petitioner stated that "[t]he state court's ruling erroneously misinterprets the plain meaning of 'any determination' in IPA civ. code sec. 1798.45(b), and failed to consider U.S. Supreme Court precedent regarding the term 'any[,]' violating [the] 14th Amendment." (*Id.* at 7.) The Petitioner argued that the state court "erroneously misinterpreted and failed to apply the U.S. Supreme Court's precedent case law regarding the term 'any' to 'any determination' in the contents of IPA civil code section 1798.45 violating Petitioner's fundamental rights-due process-14th Amendment." (*Id.*) Petitioner maintained that the language in IPA civil code section 1798.45(b) implicates his fundamental rights to have "accurate records in use in 'any determination.'" (*Id.*) Petitioner stated that "[t]here is no immunity to any agency-agent of a state [entity], that can shield respondents from failing to obey IPA-Civil code section 1798 et al. and maintain accurate records as necessary to assure fairness in Respondent Sahni's CRA she created as a CDCR employee or during a parole hearing." (*Id.*) Petitioner indicated that damages occur if inaccurate records are presented and results in the loss of liberty and violates due process. (*Id.*)

As for Ground Three, Petitioner indicated that "[t]he state court's ruling erroneously applied, misinterprets U.S. Supreme Court case *Heck v. Humphrey* (1994) 512 U.S. 477 [. . .] and *Butterfield v. Bail* (9th Cir. 1997) 120 F.3d 1023, to claims under IPA civ. code sec. 1798.45(b), (c)–1748.48(a), (b)[,] violating due process fundamental rights of Petitioner." (*Id.* at 8.) Petitioner argued that *Heck* "has nothing legally to do with Petitioner's state and

---

Cal. Civ. Code § 1798.45(a)–(c). Sections 1798.46 through 1798.48 in turn provide for the remedies available to the complainant in any successful suit against an "agency" under § 1798.45.

federal causes of action of violations of provisions of [the] IPA." (*Id.*) Petitioner stated Respondent Sahni created an unreliable and inaccurate CRA report, which Petitioner claimed to violate the IPA with a "false adverse risk assessment [as] 'high.'" (*Id.*) Petitioner indicated that he had sued Respondents for creating an inaccurate record as agents for the CDCR, in violation of the IPA, which violated Petitioner's due process right of having "full accurate information in records that are available for use in 'any determination' about Petitioner[.]" (*Id.*) Petitioner indicated that he was injured from the negligent use of the CRA created by the Respondents that violated the IPA, not the actual parole hearing. (*Id.*)

As for Ground Four, Petitioner maintained that "[t]he court failed to consider, rule on Petitioner's violations of his due process 'liberty' interests under the 14th Amendment by Respondents by the i.e. failure to adhere to the IPA civ. code sec. 1798 et [seq], CDCR D.O.M. section 13030 et al. in creating CRA violating 14th Amendment." (*Id.* at 9.) Petitioner indicated that "[a]ll CDCR employees who collects, maintains, or receives personal information shall make reasonable efforts to ensure that the information is accurate, timely, relevant and complete." (*Id.*) Petitioner argued that the Respondents violated his liberty interests by creating an inaccurate CRA report since he has a constitutional due process right to accurate prison records. (*Id.*)

## III.   LEGAL STANDARD

A motion to dismiss a petition for writ of habeas corpus is viewed as a request to dismiss under Rule Four of the Rules Governing section 2254. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) ("The Supreme Court has stated that the view 'that a Rule 12(b)(6) motion is an appropriate motion in a habeas corpus proceeding' is 'erroneous.' [. . .] Nevertheless, rule 4 of the Rules Governing Section 2254 in the United States District Courts 'explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated."); *Thompson v. Spearman*, No. 219CV2328KJMDBP, 2021 WL 3563093, at *2 (E.D. Cal. Aug. 12, 2021) (citing *O'Bremski*, 915 F.2d at 420; *Lee v. Quarterman*, 2008 WL 1696879 at *3 (S.D. Tex. 2008)

("[I]n habeas practice, a motion to dismiss for failure to exhaust pursuant to Rule 4 is the functional equivalent of a similar Rule 12(b)(6) motion in general civil practice.")); *Purdy v. Bennett*, 214 F.Supp.2d 348, 353 (S.D.N.Y. 2002) (applying Rule 12(b)(6) standards to motion to dismiss authorized by court pursuant to Rule 4 of the Rules Governing § 2254 Cases).

Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254 provides for summary dismissal of a habeas petition "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition[.]"  The Advisory Committee Notes to Rule 8 also indicates that the court may deny a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

## IV.   DISCUSSION

### A. Petitioner's Claim Does Not Fall Within the Core of Habeas Corpus

#### 1. Legal Standard

A petition for writ of habeas corpus is the exclusive avenue for claims advanced by state prisoners that fall within the core of habeas corpus.  *See Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016).  A state prisoner's claim falls within the core of habeas corpus if the claim challenges the facts or duration of the conviction or sentence.  *Id.*; *see also Hill v. McDonough*, 547 U.S. 573, 579 (2006) (challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus); *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir.1979) ("[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement").

A petitioner's claim does not fall within "the core of habeas corpus" if success on the merits "would not necessarily lead to his immediate or earlier release from confinement." *Nettles*, 830 F.3d at 935 (citing *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011) ("[W]hen a prisoner's claim would not 'necessarily spell speedier release,' that claim does not lie at 'the core of habeas corpus,' and may be brought, if at all, under §

1983.")). "[I]f a state prisoner's claim does not lie at 'the core of habeas corpus' [. . .] it may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983." *Id.* at 934.

2. Analysis

Respondents argued that Petitioner's habeas petition did not invoke federal habeas jurisdiction and should be dismissed. (ECF No. 4 at 4–5.) Respondents stated that regardless of whether Petitioner is "seeking to overturn the state court decisions or remove the CRA from his CDCR records, such relief 'would not necessarily lead to his immediate or earlier release from confinement,'" thus not lying in habeas. (*Id.* at 5.) Respondents maintained that even if the CRA at issue was removed, it "would not necessarily lead to [Petitioner] being granted parole, which is what *Nettles* requires in the context of parole—namely, that success on a claim must 'necessarily lead to a grant of parole.'" (*Id.*)

In his Opposition, Petitioner argued that challenging the duration of confinement is appropriate in habeas proceedings. (ECF No. 7 at 11.) Petitioner claimed in his Opposition that the use of the CRA had an adverse effect resulting in the denial of parole or denial of reduction of custody level due to "'high risk' violence." (*Id.*) Petitioner argued that the alleged fraudulent CRA was prejudicial in that it was used as critical evidence by the parole panel. (*Id.* at 12.) Petitioner indicated that he "did not challenge the process related [to the] parole panel decision in his complaint or this petition." (*Id.*) Petitioner indicated that he "believes a writ will advance [his] confinement release by 5 years[.]" (*Id.*) Petitioner argued that the decision to deny him parole was invalid and that he is making a "substantive challenge, [where the] results [ ] could free [Petitioner], [and] attacks the duration of confinement[.]" (*Id.* at 13.)

In his Petition, Petitioner did not put forward these specific allegations. (*See* ECF No. 1.) Petitioner's main concern was the alleged violation under the IPA for the allegedly inaccurate CRA report. (*Id.* at 6–9.) Petitioner claimed that his damages were caused by the false report created by the Respondents, not the parole hearing. (*Id.* at 8.) However, Petitioner did allege that the "respondents violated petitioner's liberty interest in creating

the inaccurate CRA report." (*Id.* at 9.) Petitioner explained that "[i]njuries-damage occurs if inaccurate records are presented and results in a loss of liberty[.]" (*Id.* at 7.)

Factual allegations asserted by pro se plaintiffs, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard still applies to pro se pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Although the factual allegations in his Opposition are not in the Petition, the Court will construe the complaint liberally and find that the Petitioner has inartfully alleged loss of liberty caused by the inaccurate CRA.

Nonetheless, any alleged errors in Petitioner's CRA lie outside the core of habeas corpus because success on this claim would not necessarily lead to his speedier release from custody. The "decision to release a prisoner rests on a myriad of considerations" and the "parole board will still have the authority to deny his request for parole on the basis of any of the grounds presently available to it in evaluating such a request." *Perrotte v. Salazar*, No. ED CV 08-00123-JHN, 2011 WL 2650011, at *6 (C.D. Cal. Mar. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995), report and recommendation adopted, No. EDCV08-00123-JHN, 2011 WL 2650186 (C.D. Cal. June 29, 2011); *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)), report and recommendation adopted, No. EDCV08-00123-JHN, 2011 WL 2650186 (C.D. Cal. June 2011); *see also Lettier v. Ayers*, 299 Fed. Appx. 717, 718 (9th Cir. 2008) (affirming district court's dismissal of a habeas petition after the district court found that a claim based on prison officials' decision to retain a psychological report allegedly containing errors in an inmate's file must be brought as a civil rights claim; and rejecting the prisoner's contention that the retention of this report

in his inmate file affected the duration of his imprisonment, because the parole board might view the report disfavorably, as "too speculative to establish habeas corpus jurisdiction").³

"The Ninth Circuit's decision in *Nettles* controls whether the Petition here falls within the core of habeas." *Gomez v. Montgomery*, No. 18-CV-2607-CAB-WVG, 2019 WL 3034903, at *3 (S.D. Cal. July 2019), report and recommendation adopted, No. 18CV2607-CAB-WVG, 2019 WL 3974069 (S.D. Cal. Aug. 2019). In *Nettles*, the petitioner who was serving a life sentence in state prison filed a habeas petition in Federal Court seeking the expungement of a disciplinary violation from his prison record on Federal constitutional grounds. 830 F.3d at 924. The petitioner argued that his eligibility for parole would be affected if the disciplinary violation was not expunged from his record. *Id.* at 924–25. The Ninth Circuit upheld the dismissal of the petitioner's claim, reasoning that success on the merits of his claim "would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole." *Id.* at 934.

As the Ninth Circuit in *Nettles* explained, California law requires the parole board to consider "all relevant, reliable information" to determine suitability for parole. *Id.* at 935. The court found that the subject disciplinary violation was only one factor, and that the parole board could have denied parole "on the basis of any of the grounds presently available to it." *Id.*; *see also Rhodes v. Ronald*, No. 217CV01196KJMCKDP, 2018 WL 1806749, at *2 (E.D. Cal. Apr. 17, 2018) (federal habeas relief is unavailable in this case because the remedy which petitioner seeks will not lead to his speedier release from custody [. . .] Correction of the alleged errors in the CRA or its removal from petitioner's central prison file will not necessarily lead the BPH to deem petitioner suitable for parole and therefore eligible for early release."); *Ogle v. Pollard*, No. 320CV1115LABKSC, 2021 WL 698199, at *2 (S.D. Cal. Feb. 2021) (regarding petitioner's claim that his constitutional

---

³ Unpublished Ninth Circuit decisions issued on or after January 1, 2007, may be cited. U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R.App. P. 32.1(a).

rights were violated when denied parole that dealt with a risk assessment prepared by psychologist that petitioner claimed to be false, the Court found that "the parole board in this case would still need to consider 'all relevant, reliable information' to determine 'suitability for parole.' [. . .] The parole board could then deny parole 'on the basis of any of the grounds presently available to it.' [. . .] Therefore, petitioner's claim falls 'outside the core of habeas corpus.'").

Similarly, even if the CRA was inaccurate, the parole board would still need to consider "all relevant, reliable information to determine suitability for parole." *Velasquez v. Sec'y of the Cal. Dep't of Corrs.*, No. CV 15-5881-R-JPR, 2017 WL 1115148 (C.D. Cal. Mar. 2017) (internal quotations omitted). The parole board could then deny parole on the basis of any of the grounds presently available to it. Correction of the alleged errors in the CRA or its removal from petitioner's central prison file will not necessarily lead to the parole board deeming Petitioner suitable for parole and therefore eligible for early release. *See Rhodes*, 2018 WL 1806749, at *2. Since Petitioner's claims would not necessarily lead to immediate or speedier release, it falls outside the core of habeas corpus.

Thus, under these circumstances, IT IS RECOMMENDED that the Court DISMISS Petitioner's federal habeas petition since the grounds raised do not fall within the core of habeas corpus and "must be brought, 'if at all,' under [42 U.S.C.] § 1983." *See Nettles*, 830 F.3d at 934 (quoting *Skinner*, 562 U.S. at 535 n.13).

**B. Petitioner Has Failed to Present a Federal Question**

1. <u>Legal Standard</u>

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of state law." *Id.* at 67; *see also Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"). Specifically, it is not this Court's role to determine whether California's laws or regulations were correctly applied

in petitioner's state court case. *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011); *see also Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.").

### 2. Analysis

Respondents argued that Petitioner's habeas petition raised issues concerning California's IPA and should also be dismissed for "failing to sufficiently allege a federal question necessary to establish federal habeas jurisdiction." (ECF No. 4 at 3–4.) Respondents maintained that "such contentions do not raise a federal question because a challenge to a California agency's compliance with state law does not give rise to federal habeas relief." (*Id.*) Respondents indicated that "other than passing reference to the Fourteenth Amendment, Wheeler cites to no federal law whatsoever in his Petition." (*Id.* at 4.) Respondents stated that the Petitioner nearly "exclusively argues that the state courts' decisions were erroneous as to the application of state law governmental immunities to the IPA." (*Id.*) Respondents argued that "even assuming the state courts erred in finding Wheeler's IPA claims were barred by various governmental immunities, 'it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions.'" (*Id.*)

In his Opposition to the Motion to Dismiss, Petitioner argued that "[t]his Court's jurisdiction to review this 2254 habeas corpus in its entirety is based on [Petitioner's] allegations that his Federal Constitutional Rights to due process were violated." (ECF No. 7 at 8–9.) Petitioner claimed that he has "suffered actual injury from the Respondents punitively illegal actions of violating the IPA laws, [ ] Federal Constitutional due process, Bill of Rights, 14th Amendment in preparing a legal document, the Fraudulent CRA with a false prejudicial conclusion for 'high risk' of violence." (ECF No. 7 at 10.)

Despite the Petition containing four grounds for relief, the basis for all four grounds is that there was an unreliable and inaccurate CRA in Petitioner's prison file, which Petitioner claimed violated the IPA and his due process right of having accurate prison

records. (ECF No. 1 at 6–9.) While Petitioner asserted that his due process rights had been violated by this allegedly inaccurate CRA, Petitioner does not offer any federal cognizable basis for a violation of any federal right. Each ground presented by the Petitioner involved claims dealing with the state court's errors in interpreting/applying California's IPA.

Petitioner generally cited to the IPA, as well as cited to the specific statutes of sections 1798.14,[4] 1798.18,[5] 1798.21–.22,[6] 1798.35–.37,[7] 1798.45–.48.[8] However, the IPA is state law that "provides an interest in, and procedures for, obtaining access to personal files held by state agencies." *Zarate v. Lewis*, No. C 10-04727 CW PR, 2012 WL 951548, at *4 (N.D. Cal. Mar. 2012); *see also* Cal. Civ. Code §§ 1798, *et seq.* Thus, the Court finds that grounds raised in the Petition directly involve a state court allegedly improperly applying a state law, the IPA.

///

---

[4] Section 1798.14 provides that "[e]ach agency shall maintain in its records only personal information which is relevant and necessary to accomplish a purpose of the agency required or authorized by the California Constitution or statute or mandated by the federal government." Cal. Civ. Code 1798.14.

[5] Section 1798.18 provides that "[e]ach agency shall maintain all records, to the maximum extent possible, with accuracy, relevance, timeliness, and completeness" and "[s]uch standard need not be met except when such records are used to make any determination about the individual." Cal. Civ. Code 1798.18.

[6] These sections indicate that "[e]ach agency shall establish appropriate and reasonable administrative, technical, and physical safeguards to ensure compliance with the provisions of [the IPA,]" Cal. Civ. Code 1798.21, and "[e]ach agency shall designate an agency employee to be responsible for ensuring that the agency complies with all of the provisions of [the IPA,]" Cal. Civ. Code 1798.22.

[7] Section 1798.35 imposes obligations on state agencies to either timely correct their records or advise the individual making the request why it will not do so. Cal. Civ. Code § 1798.35. Section 1798.36 provides procedures for when an individual disagrees with the agency's refusal to amend a record and allows the individual to request a review and provide a statement to the agency. Cal. Civ. Code § 1798.36. Section 1798.37 provides that the agency shall clearly note the dispute portions in the record and make copies available with a concise statement of the reasons for why the agency did not make an amendment. Cal. Civ. Code § 1798.37.

[8] Section 1798.45 creates a right of action only against state agencies that fail to comply with the CIPA. Cal. Civ. Code § 1798.45. Sections 1798.46 through 1798.48 in turn provide for the remedies available to the complainant in any successful suit against an "agency" under § 1798.45.

While Petitioner argued that the state court erred by misinterpreting/misapplying California's IPA in relation to his claims as to the allegedly inaccurate CRA, courts have "long recognized that 'a mere error of state law' is not a denial of due process." *Swarthout*, 562 U.S. at 222; *see also Waddington*, 555 U.S. at 192 n.5 ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"). Specifically, it is not this Court's role to determine whether California's laws or regulations were correctly applied in petitioner's state court case. *See Swarthout*, 562 U.S. at 222.

In that Petitioner claims the state court erred by misinterpreting/misapplying California's IPA in relation to his claims, he has not stated a federal right which was violated. Petitioner has not met his burden in alleging specific facts to show a federal right is involved. *O'Bremski*, 915 F.2d at 421. Therefore, IT IS RECOMMENDED that the Court DISMISS Petitioner's federal habeas petition since Petitioner has failed to present a federal question regarding the allegedly inaccurate CRA in his prison file.

### C. Due Process Right to an Accurate CRA

Petitioner argued that the Respondents "violated [his] due process - his fundamental rights to full accurate information in records that are available for use in 'any determination' about [him.]" (ECF No. 1 at 8.) Petitioner indicated that "Respondents violated [his] 'liberty' interests in creating the inaccurate CRA report" and that he has a "constitutional right under fundamental fairness – due process to accurate records/transcripts." (*Id.* at 9.) Petitioner claimed that this caused "serious damage – injuries in unreliable CRA report and adverse 'high' risk including a false mental health diagnosis all in violation of due process. (*Id.* at 8.) Petitioner maintained that he is seeking damages "to remedy asserted violations of the due process 'liberty' interest under the 14th Amendment." (*Id.* at 9.)

For there to be any federal due process violation, there must first be a federal liberty or property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–72 (1972). Notably, Courts have found that one does not have a liberty interest in having

accurate prison records. *See Webb v. California Dep't of Corr. & Rehabiltation*, No. 1:14-CV-01528-MJS PC, 2014 WL 5361961, at *3 (E.D. Cal. Oct. 2014) ("Plaintiff has no free standing right to a correct prison file."); *McCoy v. Ramirez*, No. 1:13-CV-01808-MJS PC, 2014 WL 654537, at *6 (E.D. Cal. Feb. 2014) ("Plaintiff has no free-standing right to a correct prison file. The Due Process Clause itself does not confer on inmates an independent right to an accurate prison record.") (citing *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987)); *Perrotte v. Muntz*, No. EDCV0701031MWFVBK, 2012 WL 13226608, at *9 (C.D. Cal. Oct. 1, 2012) (citing *Paul v. Davis*, 424 U.S. 693, 711–14 (1976); *Velasquez v. Woods*, 329 F.3d 420, 421–22 (5th Cir. 2003)) ("The inaccuracy of records compiled or maintained by the State is not, standing alone, sufficient to state a claim of constitutional injury under the Due Process Clause."), report and recommendation adopted, No. EDCV0701031MWFVBK, 2013 WL 12474128 (C.D. Cal. Feb. 2013); *Perrotte*, 2011 WL 2650011, at *7, *8 n.6 (finding that the "[p]etitioner does not have a federal liberty or property interest in the documents contained in his prison file" and cautioning that allowing every memorandum in a prisoner's file to be enough to show a protected liberty interest, since it could lead to federal court review of every document issued); *Glass v. Woodford*, No. 1:09CV00098-OWWDLBPC, 2010 WL 1131174, at *3 (E.D. Cal. Mar. 2010) (citing *Hernandez*, 833 F.2d at 1319) ("The Ninth Circuit has not found that prisoners have an independent right, grounded in the Due Process Clause, to an accurate prison record. [. . .] Plaintiff's request for an accurate prison record, without more, does not implicate the protections of due process."), report and recommendation adopted, No. 1:09CV00098OWWSKOPC, 2010 WL 2364165 (E.D. Cal. June 2010).

Therefore, the Due Process Clause is not implicated because Plaintiff has no free-standing right to a correct prison file and the Due Process Clause itself does not confer on inmates an independent right to an accurate prison record. *See Webb*, 2014 WL 5361961, at *3; *McCoy*, 2014 WL 654537, at *6.  Accordingly, IT IS RECOMMENDED that the Court DISMISS Petitioner's federal habeas petition since Petitioner has failed to present a

claim under the Due Process Clause regarding the allegedly inaccurate CRA in his prison file.

### D. Due Process at Parole Hearing

Petitioner appeared to argue that the allegedly inaccurate CRA presented at the parole hearing was a due process violation. (ECF No. 1 at 7–9.)[9] The Respondents stated that even if the CRA was removed, Plaintiff would not necessarily be granted parole. (ECF No. 4 at 5.)

While the Supreme Court recognized that California law creates a liberty interest in parole, the Court held that the Due Process Clause requires only "minimal" procedures to vindicate that interest. *See Swarthout*, 562 U.S. at 220 ("When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal."). Specifically, the Supreme Court held that a prisoner's state law liberty interest in parole is sufficiently protected under the Federal Constitution as long as the prisoner is "allowed an opportunity to be heard and [is] provided a statement of the reasons why parole [is] denied." *Id.* (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 16 (1979) ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords a process that is due under these circumstances. The Constitution does not require more.")); *see also Perrotte*, 2011 WL 2650011, at *7.

Petitioner has not alleged that he was not allowed an opportunity to be heard nor provided a statement of the reasons why parole was denied. The Supreme Court recognized that "the decision to release a prisoner rests on a myriad of considerations" and that "the

---

[9] Petitioner alleged that Respondent Sahni created an inaccurate CRA because it contained a false risk assessment. (ECF No. 1 at 8.) The Court makes no finding, but assumes for Petitioner's Due Process argument to be so.

prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his record." *Sandin.* 515 U.S. at 487.  Petitioner did not allege that he was not allowed to be heard at his parole hearing to explain the allegedly inaccurate CRA report.

Further, the federal court's oversight into parole hearings is very limited. *Rosser v. Shaffer*, No. 116CV01342DADEPGPC, 2017 WL 1064670, at *6 (E.D. Cal. Mar. 2017). "This Court does not insure that the Board of Parole Hearings is complying with state law, such as the weight given to expertise regarding an offenders' age or other factors." *Id.* "It also does not determine if better procedures would be fairer, such as providing an audio recording to prisoners." *Id.* "Nor does it evaluate whether the evidence presented to the Parole Board was accurately and fairly evaluated." *Id.*

To the extent Petitioner asserts that he is entitled to habeas relief because the Board of Parole Hearings relied on improper evidence, an inaccurate CRA report, his claims do not warrant habeas relief. *Swarthout* was "unequivocal in holding that if an inmate seeking parole [received the safeguards under *Greenholtz*], that should be the beginning and the end of the inquiry into whether the inmate received due process." *Pearson v. Muntz*, 639 F.3d 1185, 1191 (9th Cir. 2011) (quoting *Swarthout*, 562 U.S. at 220) (internal quotations, alterations, and ellipsis omitted).  Since Petitioner did not allege that the safeguards under *Greenholtz* were not received, Plaintiff's Due Process rights have not been violated by the alleged inaccurate CRA.  Therefore, IT IS RECOMMENDED that the Court DISMISS Petitioner's federal habeas petition since Petitioner has failed to present a claim under the Due Process Clause regarding the allegedly inaccurate CRA being used at the parole hearing.

### E. The Petition is not amenable on its face for conversion to a 42 U.S.C. § 1983 claim

When an action is improperly brought as a habeas petition, district courts "may construe a petition for habeas corpus to plead a cause of action under § 1983 after notifying and obtaining informed consent from the prisoner." *Nettles*, 830 F.3d at 936.  However,

courts should only convert the petition to a § 1983 claim if it "is amenable to conversion on its face." *Id.* A petition is amenable to conversion on its face if "it names the correct defendants and seeks the correct relief." *Id.*

A "habeas corpus action and a prisoner civil rights suit differ in a variety of respects [. . .] that may make recharacterization impossible or, if possible, disadvantageous to the prisoner compared to a dismissal without prejudice of his petition for habeas corpus." *Id.* (quoting *Robinson v. Sherrod*, 631 F.3d 839, 841 (7th Cir. 2011) and citing *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)). The differences would include naming the proper defendant(s), filing fees, means of collecting the filing fees, and restrictions on future filings. *Id.*; *see also Glaus*, 408 F.3d at 388 (noting that recharacterizing a prisoner's action as a civil rights action may make it subject to the PLRA's three-strikes rule and different exhaustion requirements, as well as requiring the complaint to name a different defendant, such as the individual official responsible for the wrong rather than the warden).

Here, the petition is not amenable on its face for conversion. First, Petitioner named Kathleen Allison, N. Sahni, J. Tehrani, and C. Kusaj as Respondents. (ECF No. 1.) However, besides referencing that N. Sahni created an allegedly inaccurate CRA, the Petition does not contain any specific allegations against Kathleen Allison, N. Sahni, J. Tehrani, and C. Kusaj as would be required to name them as defendants in a § 1983 action. *See*, *e.g.*, *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.") (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976))).

Second, the Court's conversion of Petitioner's habeas petition could potentially have negative consequences for Petitioner. Although Petitioner alleged that he exhausted his claims in his habeas Petition, habeas and § 1983 claims are subject to different exhaustion requirements and his failure to properly allege exhaustion for a § 1983 claim could result in dismissal. *See Nettles*, 830 F.3d at 932 n. 8 ("The procedural requirements imposed by AEDPA and the PLRA are distinct in substantial respects."). Additionally, § 1983 claims

are also subject to the PLRA's three strikes rule. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1761–62 (2015) (quoting 28 U.S.C. § 1915(g) and explain "a special 'three strikes' provision prevents a court from affording in forma pauperis status where the litigant is a prisoner and he or she 'has on 3 or more occasions, while incarcerated ..., brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.'"). Petitioner should have the opportunity to attempt to state a cognizable § 1983 claim and consider the possible consequences of the three strikes provision.

Under these circumstances, the Court recommends the Petition be dismissed rather than converted to a § 1983 action because it is not amenable to conversion on its face. *See Nettles*, 830 F.3d at 936. If this Report and Recommendation is adopted and his Petition dismissed, the Court additionally recommends that Petitioner be advised of the following: (1) "that the court is not making a decision on the ultimate merit of the case;" (2) that Petitioner "may refile immediately under the proper legal label, subject to the normal rules such as those prohibiting frivolous lawsuits; and (3) that refiling under the proper legal label will probably have certain consequence," including those noted above as to exhaustion and the three strikes provision. *See Glaus*, 408 F.3d at 389–90 ("If, as normally will be the case, conversion is improper, the district court should include [this] short and plain statement"); *Del Rio v. Paramo*, No. 17CV608 GPC-BGS, 2018 WL 325106, at *5 (S.D. Cal. Jan. 2018).[10]

///
///
///
///

---

[10] Although the court in *Nettles* did not specifically require this advisement to the petitioner in that case, in finding courts could convert habeas claims to § 1983 claims under appropriate circumstances, the court adopted the reasoning of *Glaus*, which requires this advisement when conversion is improper. *See Nettles*, 830 F.3d at 936; *Glaus*, 408 F.3d at 389–90.

## V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, (2) **GRANTING** Respondent's Motion to Dismiss (ECF No. 4), and (3) **DISMISSING** the Petition.

**IT IS ORDERED** that no later than **June 28, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 12, 2022**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: June 7, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge